Hr. Justice Van Orsdel
delivered the opinion of the Court:
This is an appeal from the decision of the Commissioners of Patents, refusing to grant certain claims made by appellant, Carleton Ellis, in an application for finish removers. The *205 Primary Examiner rejected these claims on the grounds, first, that they were devoid of invention; and, second, that to grant them would allow appellant to cover compositions of matter to which he was not entitled. On appeal, the Board of Examiners-in-Ohief reversed the decision of the Primary Examiner as to the first ground of rejection, but affirmed it as to the second. This decision was affirmed by the Commissioner.
The appealed claims are eight in number, the following, however, being sufficient to illustrate the invention:
“7. The finish remover comprising composite finish solvent material, including a liquid, finish solvent, ketonic derivative of a cyclic 0H2 hydrocarbon.”
“11. The finish remover comprising composite finish solvent material, including a liquid, finish solvent, ketonic derivative of a cyclic CH2 hydrocarbon, and miscible solvent material of a generally penetrating and loosening character.”
The invention is described by the Primary Examiner as follows: “The invention relates to paint removers. The well-known paint removers contain solvents on the order of benzol, other solvents on the order of alcohol and stiffening material. The present invention uses in addition to the above well-known ingredients, cyclic CH2 hydrocarbons, as hexahydro benzol, or derivatives of cyclic hydrocarbons, as adipin ketone.” The Patent Office has confined appellant to claims specifying adipin ketone as an ingredient. In his application, however, he has enumerated many other substances of the same chemical group, which possess the same properties as adipin ketone, and which may be used with equally satisfactory results. The specification states: “Many of the cyclic OH2 hydrocarbons and their derivatives are valuable as finish solvents in removers such as the cyclic paraffins, including cyclopentane or pentamethylene, vinyl trimethylene, suberane or eycloheptane, hexahydro benzenes or naphthenes, embracing hexahydrobenzol, hexahydro toluol and the like. Many immediate derivatives of these cyclic paraffins or cyclic hydrocarbons are also desirable finish solvents, such, for example, as acetyltrimethylene, diteramethylene ketone, adipin ketone (ketopentamethylene), methyl cyclopente *206 non, cyclopentane carboxylic acids, suberone, cyclohexanol, pirnelin ketone, hexahydrometa toluic acid and similar carboxylicacids of the bydroaromatic group and other oxygenated or halogenated bodies thereof.”
It was held by the Patent Office that to grant the claims^ here under consideration will extend the scope of appellant’s* invention beyond that to which he is entitled, and will permit him to stand in the path of subsequent inventors in the same, art. It was also held that to determine which of the cyclic CH2. hydrocarbons not mentioned in the application are finish solvents will require experiment. But the injustice to which this-ruling will lead is manifest. Counsel for appellant stated at bar, and it was not controverted, that no phraseology other-than that of the claims here in issue could be employed in. broadly defining the invention, and that, if these claims be not. allowed, appellant will be limited to a patent covering the use-of adipin ketone only. This would furnish him little or no-protection in the practice of his invention. A competitor could! use with impunity any of the numerous equivalents specified by appellant, and not come within the scope of the patented! claims.
The object of the patent laws is to secure to the inventor the-full rewards of his invention. He is not limited to the use of one specific substance, but his patent covers all known equivalents. In Robinson on Patents, secs. 257 and 258, it is said: “As the substitution of equivalents works no variation in the-substance of an invention, so all equivalents, whether actually-known to the inventor or not, are covered by his patent. * *
* The doctrine of equivalents applies alike to all classes of inventions, and to all inventions of whatever class. Equivalents-in an art or process are such acts as, in accordance with preceding rules, are interchangeable with those which the inventor-has himself employed. * * * In compositions of matter,, substances which, at the granting of the patent, were known as-capable of serving the same purpose in the composition as. the ingredients actually employed become thereby their chemical equivalents.” But the specification and claims must be *207 broad enough to cover them. Read Holliday & Sons v. Schulze-Berge, 78 Fed. 493.
Neither do we think that the allowance of the claims in issue will have the effect attributed by the Patent Office. The claims of a patent must be construed in the light of its specifications and drawings, and may be limited, but not enlarged, by them. Continental Paper Bag Co. v. Eastern Paper Bag-Co. 210 U. S. 405, 52 L. ed. 1122, 28 Sup. Ct. Rep. 748. Here appellant has specified numerous substances which he declares are not only finish solvents themselves, but are similar to others in the class which he seeks to cover by the appealed claims. They are sufficient to convey to one skilled in the art the nature of the chemicals which will accomplish the desired result. The range of equivalents depends upon the nature and extent of the invention. If the invention be broad and primary, the range of equivalents will be likewise broad; if the invention be but an improvement over the prior art, the range of’ equivalents will be correspondingly restricted. Ibid.
But the equivalent, the use of which is sought to be embraced in the patent, must be one known, or which could have been known without the exercise of inventive skill, at the time of the patent. In the case of American Sulphite Pulp Co. v. Howland Falls Pulp Co. 25 C. C. A. 500, 50 U. S. App. 52, 80 Fed. 395, the following was quoted with approval from Read Holliday & Sons v. Schulze-Berge, supra: “I think the-law must be that where the new ingredient is such as would have been known to or employed by the ordinary skilled, practical chemist, or is such as would naturally have been developed in the growth of the art, and the substitution thereof involves no alteration or new operation or result, it is covered by the patent, provided the specifications and claims are sufficiently broad to include it.” Robinson, Patents, sec. 257; Walker, Patents, sec. 354. And in Standard Paint Co. v. Bird, 175 Fed. 346, the same rule was laid down, as follows: “To-infringe a patent of this description, the alleged infringer must use the ingredients claimed to be those used in the process, or used to form the product, or a ‘well-known’ equivalent therefor- *208 It is not sufficient that tests or experiments have shown that aome substance not claimed, and, at the time the patent was .applied for and granted, not known, to be an equivalent, had proved just as good or just as efficient in the combination as a •substitute for the ingredient claimed. Gill v. Wells, 22 Wall., 1, 22 L. ed. 699; Seymour v. Osborne, 11 Wall. 555, 20 L. ed. 42; Brown v. Stilwell & B. Mfg. Co. 6 C. C. A. 528, 6 U. S. App. 427, 16 U. S. App. 234, 57 Fed. 731; Rowell v. Lindsay, 113 U. S. 97, 28 L. ed. 906, 5 Sup. Ct. Rep. 507.”
The Patent Office relies upon the cases of Re Incandescent Lamp Patent, 159 U. S. 465, 40 L. ed. 221, 16 Sup. Ct. Rep. 75, and Matheson v. Campbell, 24 C. C. A. 384, 45 U. S. App. 473, 557, 78 Fed. 910. The former case is easily distinguished from the case at bar. There, the plaintiffs had discovered that carbonized paper could be used as the filament for incandescent lamps. They did not, however, confine themselves to such material, but also made claims to filaments of -carbonized fibrous and textile material. It appeared that an examination of over six thousand vegetable growths showed that none of them could be used for that purpose. It was only after 'experiments lasting several months that the defendant discovered a substitute in a certain kind of bamboo. At the time of plaintiffs’ patent there were no known equivalents of their carbonized paper filament, and apparently none could have been ascertained without invention. ' The court, in holding them limited to a •claim for the material they had described, used the following language: "If the patentees had discovered in fibrous and textile substances a quality common to them all, or to them generally, as distinguishing them from other materials, such as minerals, etc., and such quality or characteristic adapted them peculiarly to incandescent conductors, such claim might not be too broad.” The case at bar, being an ex parte proceeding for the allowance of certain claims, contains no testimony to show whether or not substances of the class called for in appellant’s claims are generally capable of dissolving finish. But as appellant has specified a large number of substances containing the common quality which fits them for use in his in *209 vention, in the absence of evidence to the contrary, we believe that-the donbt should be resolved in his favor. “Where there is a serious doubt left in the mind of this court, we believe that that doubt should be resolved in favor of the one seeking a patent; for, if his claim be denied, he has nothing with which he can go into court and attempt to enforce a lawful monopoly.” Re Schraubstadter, 26 App. D. C. 331.
The case of Matheson v. Campbell, supra, might also be distinguished on the ground that the patentee had “himself experimented only with three of four bodies out of a group of hundreds.” But if not, it has not been followed by the later decisions. In Fullerton Walnut Growers’ Asso. v. Anderson-Barn-Grover Mfg. Co. 92 C. C. A. 295, 166 Fed. 443, a case closely analogous to the one at bar, the patent before the court was for a process for bleaching nuts, in which a weak acid was specified as an ingredient. In discussing a contention similar to that made by the Patent Office here, the court said: “But it is said that the term ‘weak acid’ is indefinite, and that the appellant which used diluted sulphuric acid, was not precluded from such use, since sulphuric acid is not a weak acid, and no standard of acidity is fixed by the term ‘weak acid.’ But by specifically referring to the use of vinegar, the patentee has made known the standard of acidity of the acid which will operate successfully with the solution. He declares in his specifications that he has found that, while many acids might produce the result of liberating the gas, a safe acid for the purpose is acetic acid or vinegar. In his claim he confines himself to no specific acid. The appellant has found that by the use of diluted sulphuric acid the bleaching process can be as effectually accomplished as by the use of vinegar. But it does not thereby avoid infringement. It uses a weak acid within the terms of the claims. * * * Obviously he was not required to experiment with all kinds of acids, and to state in his specifications what acids would and what would not be suitable for the purpose, and we think it does not extend the patent beyond its proper scope to say that it covers the use of any acid which, by chemical reaction, will release the chlorin *210 in the bleaching solution. A strong acid would cause a violent and sudden evolution of chlorin, which would almost instantaneously be dissipated. A weak acid releases the chlorin gradually and continuously. There doubtless are acids known to chemistry which will not accomplish the reaction incident to the release of the chlorin, but the acids commonly known, such as acetic, sulphuric, muriatic, oxalic, and nitric acids, when diluted to the acidity of vinegar, may, it is shown, be successfully used in the process.”
In the case of Welsbach Light Co. v. Sunlight Incandescent Gas Lamp Co. 87 Fed. 221, where the claim was drawn to cover “paraffin, or other suitable material, substantially as set forth,” the court said: “While collodion is not chemically an equivalent of a hydrocarbon resin gum, and is not paraffin or shellac, it performs the same functions, in the same manner, and with the same result. A patentee is not obliged, in his specification, to state all the known equivalents of the materials used by him. It is the patent as finally issued which the court is to construe, and upon which the patentee must stand. In this case the patentees have claimed 'paraffin, or other suitable material, substantially as set forth.’ They have set forth that 'other materials may be employed, as long as they set hard at ordinary temperatures, and burn away without mechanical destruction to the mantle.’ The defendant uses a suitable material, known at the date of the invention to have all these properties and characteristics, and has thereby appropriated complainant’s product.”
And in the case of American Sulphite Pulp Co. v. Howland Falls Pulp Co. supra, where a patent claiming cement as a lining for digesters was in issue, the court said: “And we think, upon principle and authority, that Russell, having discovered that cement material generally possesses the qualities required for his conception of a homogeneous digester lining, should not be limited to such materials in the class of cementitious mixtures as he had chemically and commercially isolated as individuals, but that his claims and description should be construed as including all cementitious mixtures which ordinary *211 skilled practical chemists might be expected to find as answering the requirements of the described conditions, or such as would naturally develop in the growth of the art without invention.”
We have cited numerous cases and quoted from the decisions at great length, for the reason that the case before us in a highly technical one. From a review of the authorities, and the application of the rule so generally announced, we think it is apparent that the expression, “a liquid, finish solvent, ketonic derivative of a cyclic CH2 hydrocarbon,” used in the appealed claims, means only such ingredients as are the known equivalents of those specified in appellant’s application, or which could be ascertained to be such by those skilled in the art, without the exercise of invention. Whether the range of equivalents covered by these claims be broad or narrow depends upon the prior art, and is a question of construction. In view of all the facts of the case,—the fact that no other phraseology can be employed to accord to appellant the protection to which he is entitled; the fact that, from the record, there is a fair presumption that the substances embraced in the class claimed are generally capable of accomplishing the purposes of the invention; and the further fact that the claims must be construed in the light of the specification, and, if necessary, be limited by it,—we are of opinion that the claims here under consideration should be allowed.
The decision of the Commissioner of Patents is reversed,, and the clerk is directed to certify these proceedings as by law-required. Reversed.