W. H. COE MFG. CO. et al. v. AMERICAN ROLL GOLD LEAF CO. et al.

(District Court, D. Rhode Island. September 28, 1912.)

No. 2,746.

1. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—MACHINE FOR PACKAGING DECORATIVE FILMS.

The Coe patent, No. 580,817, for a machine for packaging decorative films, designed for winding up on a supporting strip of paper and into a package roll a continuous strip of gold leaf or similar metallic film entirely by mechanical action, was not anticipated, discloses patentable invention, and is entitled to a fairly broad range of equivalents; also *held* infringed.

2. PATENTS (§ 235*)—INFRINGEMENT—SIMILARITY OF OPERATION—"AUTOMATICALLY."

The word "automatically" may properly be applied to a mechanism which is hand-actuated, as well as to mechanism which is actuated by other mechanism, where, when so actuated, the parts co-operate and perform their functions automatically.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 371; Dec. Dig. § 235.*

For other definitions, see Words and Phrases, vol. 1; pp. 649, 650.]

3. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—PACKAGE ROLL OF METALLIC LEAF.

The Coe patent, No. 848,883, for a package roll of metallic leaf, *held* valid and infringed.

In Equity. Suit by the W. H. Coe Manufacturing Company and others against the American Roll Gold Leaf Company and others. On final hearing. Decree for complainants.

Tillinghast & Collins and Wm. R. Tillinghast, all of Providence, R. I., for complainants.

Horatio E. Bellows, of Providence, R. I., for defendants.

BROWN, District Judge. The bill charges infringement of two patents to Walter H. Coe—No. 580,817, April 13, 1897, for a "machine for packaging decorative films"; and No. 848,883, April 2, 1907, for a "package roll of metallic leaf."

[1] The machine of patent 580,817 is designed for winding up, upon a supporting strip and into a package roll, a continuous strip of gold leaf or similar metallic film. The continuous strip of gold leaf is formed from a succession of overlapping gold leaves.

In the prior art is the Wright patent, 289,486, December 4, 1883, which shows a continuous strip of gold leaf rolled up upon a supporting strip. Sheets of gold leaf were placed by a hand tool upon a supporting strip of paper, the edges were slightly overlapped, then pressed together, and the strips of paper and gold were then rolled up together into a package roll.

The Wright apparatus was simple, consisting of two rolls with a pad between them. From a supply roll the paper was carried along the pad to a second roll. The gold leaf was applied by the operator to the paper while on the pad, and then rolled up together with the paper upon the second roll; the operation being repeated until the package roll was of the desired size. The Wright patent

suggests that the paper be dusted with powder before the gold leaf is laid upon it.

Mr. Livermore, complainants' expert, states that the machine of the Coe patent was devised—

"to perform the operation of transferring sheets of gold from the book to the paper-supporting strip, and to apply them in proper lapped position on said strip, without requiring any hand manipulation whatever of the gold leaf other than what may be involved from time to time in smoothing out some portion of the sheet which may have failed to adhere properly to the paper when applied thereto by the machine."

In the Coe machine there is a supply roll for a strip of mounting paper, to which the metal film is to be applied, and in which it is to be rolled up, and from which it subsequently may be applied to a surface prepared for gilding. As the strip is led off from the supply roll, there is provision for giving one surface a slight covering of powder to render it nonadhesive relative to the gold leaf; the other surface being dragged over a bar of wax to render it slightly adhesive, so that the gold leaf will adhere thereto. After one surface has thus been rendered adhesive and the other nonadhesive, the strip is carried around a cylinder or pressing roller with its nonadhesive surface against the cylinder and its adhesive surface exposed. The book of films or gold foil sheets is placed upon a supporting table. The uppermost paper leaf of the book is turned back, exposing the gold film. At each cycle of operation of the machine the pressing roller and other rollers will draw off from the supply roll a part of the mounting strip, and wind another equal portion into the package roll. At the same time the table will be yieldingly pressed upward toward the pressing roller, whereby the exposed sheet of gold will be pressed against the mounting strip on the pressing roller and pressed into contact with said strip as it advances in feeding action. The table is then returned to its original position, the operator turns another paper leaf and exposes the next gold film sheet, and the operation is repeated.

To form a continuous strip the sheets of gold must be properly lapped. At the end of the feed movement the sheet already applied is left in just the proper position to engage with the forward edge of the next sheet. The sheets of foil are each properly lapped upon the one previously applied without hand manipulation of the leaf. The movements of the table and pressing roller are positively fixed by the mechanism, and these movements determine the relative positions of the rear edge of the leaf already applied to the forward edge of the sheet to be applied.

The complainants' expert, Mr. Livermore, says upon a review of the evidence as to the prior art:

"The machine of the Coe patent was the first example of a machine of any kind for performing the work of transferring metallic film sheets from a book to a supporting strip of indefinite length and forming a rolled-up package strip of such paper with foil mounted upon one side thereof; said work being performed entirely by the machine elements, without any hand manipulation of the foil whatever in the normal regular operation of producing material. * * *"

In my opinion this statement is accurate and fully justified by the evidence in the record. The inventor, therefore, was entitled

to generic claims and to cover a fairly broad range of equivalents.

As each brief discusses claims 1 and 4 as similar claims involving the same questions, we may follow that course.

"1. In a machine for winding decorative films into a package roll, the combination, with means for drawing the strip forward, of the pressing roller, the table for holding the book of decorative films, and means for automatically causing the lapping contact of the decorative films upon the strip, substantially as described."

"4. In a machine for winding decorative films into a package roll, the combination with the pressing roller, the table for supporting the book of films, and means for automatically lapping the films upon the strip, of the stationary roller, and the movable roller, adapted to hold the winding package in contact with the pressing roller and the stationary roller, substantially as described."

Claim 1 has as an element "means for automatically causing the lapping contact of the decorative films upon the strip, substantially as described." Claim 4, "means for automatically lapping the films upon the strip," etc.

The relative positioning of the two films is produced positively by the relative travel of the table and roll. There is a concurrent travel of table and pressing roll for a distance equal to the length of the leaf less the length of the lap of the two films. The lapping operation includes the bringing of the edge of one film over the edge of the other and the bringing of the two edges into contact, so that they will adhere and form a continuous strip.

The principal question of infringement relates to the lapping operation, and to a comparison of the means employed by complainants and defendants for that purpose.

In the complainants' machine the table that supports the book of films has both a lateral movement, whereby the edge of the new sheet is brought under the edge of the preceding sheet, and an upward movement, which brings the edges in contact. These movements are machine controlled.

The defendants employ a table which is pivoted and is tilted by the hand of the operator, carrying the new film to the preceding film on the pressure roll by an angular movement that is both forward and upward. This is the exact mechanical equivalent of complainants' lateral and upward movement.

As in complainants' machine the relative positioning of the films is produced positively by the mechanism of the machine. The defendants' table is positively controlled in its angular movement forward and upward by the pivots upon which it moves. The operator has only to press downward the rear end of the table, and can trust entirely to the machine itself to guide and carry the advancing leaf of gold into proper contact with the preceding film.

[2] The defendants lay great stress upon the manual operation of pressing down the rear end of the table. This, it is said, is not an "automatic" operation. The defendants' combination, nevertheless, includes means for causing the lapping contact of the films upon the paper strip. These means are mechanical means, which are not mere hand tools, though the hand may be employed to furnish power to operate them. The hand power is applied at a time when the strip upon the pressure roll is in a suitable position for

lapping engagement with the succeeding strip. The roll, it is said, merely serves as a dead abutment. But it not only co-operates with the table when the table brings the new film in contact with the preceding film to press the two films together, but it automatically presents a film in proper position for engagement with a new film. It is apparent that what the operator does in the lapping operation is very different from the manipulation of a hand tool. ·

The word "automatically" may properly be applied to mechanism which is hand-actuated, as well as to mechanism which is actuated by other mechanism. It may mean "self-regulating," as well as self-moving. The operator may do something, and the machine may do the rest. So far as the mechanism does what the operator himself was obliged to do in the prior art, so far as machine parts act in accordance with the law of their organization, and do what otherwise the operator must do himself, so far the word "automatically" may be properly applied.

"It may as well be applied to any part of the patented machine as to the whole of it, when necessary to give full effect to the invention." Bresnahan v. Tripp Giant Leveller Co., 102 Fed. 899, 43 C. C. A. 48.

The defendants' machine has means for automatically controlling the position of the film that is on the roll, and also means for carrying the succeeding film into lapping contact with the preceding. The latter means, while hand-actuated, do not correspond to and are not controlled in direction by the movements of the hand. The hand moves down, and this movement is "automatically," by the law of the machine, converted into a forward upward movement, which produces the lapping contact in co-operation with the roll, which has been machine-controlled in its movements. The questions which the defendants raise upon the word "automatically" are rather verbal than substantial. I agree with the opinion of complainants' expert, Mr. Livermore, that the machines differ only in minor mechanical details of subsidiary features not referred to in the claims in suit.   ·

### Claims 2 and 3.

"2. In a machine for winding decorative films into a package roll, the combination, with means for winding up the strip and film in a package roll, of a bar of wax or other suitable material, in contact with which the strip is. drawn, to receive a coating adapted to secure the proper adhesion of the film to the strip, and means for applying the film to the strip, substantially as described.

"3. In a machine for winding decorative films into a package roll, the combination, with means for drawing the strip forward, of a pad for spreading the powder upon one side of the strip, and a bar of wax or other suitable material, in contact with which the strip is drawn to receive a coating upon the opposite side of the strip, which is adapted to secure the proper adhesion of the decorative film thereto, substantially as described."

These claims include elements which operate upon the paper to make it adhesive or nonadhesive. The bar of wax is employed to make one side of the paper adhesive in order to secure the adhesion of the gold.

In defendants' machine there is employed, in a position corresponding to that of complainants' bar of wax, a brush of stiff wire. Ac-

cording to the preponderance of evidence, this serves to give a slight roughness to the surface of the paper, thus aiding the adhesion of the gold film to one side of the paper. The presence of this wire brush for the performance of any other function is not satisfactorily shown by the defendants.

Claim 2 is for a combination which includes means for applying the film to the strip, as well as means for preparing the strip to make it adhesive. In a patent to Coe, No. 848,883, is a disclosure that a strip roughened on one side may be employed, instead of a strip waxed on one side. The substitution of means for roughening, instead of means for waxing, seems merely the substitution of equivalent means of rendering the surface adhesive. The bar of wax and the wire brush are similar in location. They are alike, in that they both serve to make one side of the paper adhesive. The cylindrical bar of wax is not merely material used in making the product, but serves as a mechanical support to a removable surface, just as a metal inking roll serves to support and to present ink in a printing press. It has a mechanical function of presenting the adhesive to the paper at the proper time. Whether this roll is all of wax, or of metal covered with wax, would be immaterial.

Under the principles stated by Judge Colt in Edison Electric Light Co. v. Boston Incandescent Lamp Co. (C. C.) 62 Fed. 397, and by Judge Taft in McCormick Harvester Mach. Co. v. C. Aultman & Co., 69 Fed. 371, 386, 16 C. C. A. 259, I am of the opinion that the defendants do not escape infringement of claim 2 by the substitution of the wire brush for the bar of wax.

Claim 3 includes a pad for spreading powder upon one side of the strip, as well as the bar of wax, but omits the means for applying the film to the strip. It thus seems to relate merely to the function of preparing the paper, so that one side may be adhesive and the other nonadhesive. The defendants cite nothing that anticipates this claim. What has been said concerning the bar of wax in relation to claim 2 is also applicable to claim 3.

### Patent 848,883, for Package Roll of Metallic Leaf.

[3] The single claim is:

"A package roll of metallic leaf, having its supporting strip provided with a smooth surface at one side, and a comparatively rough surface at the other, whereby the metallic leaf may be suitably held for delivery upon unwinding the roll."

The patentee thus describes the invention:

"It is the object of my invention to dispense with the use of both adhesive and nonadhesive materials in connection with the supporting strip of a package roll; and my invention consists in a package roll of metallic leaf in which the supporting strip is provided with a smooth surface upon one side and comparatively rough surface upon the other side, whereby the metallic leaf will be unequally acted upon by the surface of the said strip, and the package roll may be unwound without liability of displacing the fillet of metallic leaf from its proper connection with the unwound strip, and the troublesome employment of wax or powder will be avoided."

The first question is whether the specific character of the comparatively adhesive and nonadhesive surfaces of the supporting strip in-

volves a patentable difference from the package rolls of the prior art. The specification states:

"The metallic leaf, when unwound from the package roll *A*, will be properly held on the said supporting strip by the natural tendency of the metallic leaf to cling to the rough side and leave the smooth side thereof."

The citations from the prior art do not describe this specific construction, which is in the line of simplification in structure as well as of manufacture.

The prior use of adhesives and nonadhesives shown in the machine patent in suit and in other patents to Coe, No. 508,869, November 14, 1893; No. 548,113, October 15, 1895; No. 668,575, February 19, 1901—and his means for dispensing with adhesives in his patents No. 678,162, July 9, 1901, and No. 819,001, April 24, 1906, tend to show that, after the generic invention of a roll with a supporting strip with adhesive and nonadhesive sides, there was still a practical difficulty in finding the best means for that purpose.

Under such conditions, and in the absence of evidence to anticipate, the court is unable to say that the change from the prior art was obvious and did not involve patentable invention. The patentee is entitled to the presumption of validity which attaches upon the issue of a patent.

Upon a hearing which included the operation of the machines before the court, and upon a consideration of the briefs and record, I am of the opinion that both patents are valid, and that the defendants infringe claims 1, 2, 3, and 4 of patent No. 580,817, and the single claim of patent No. 848,883.

A draft decree may be presented accordingly.