## ELLIOTT ADDRESSING MACH. CO. et al. v. ADDRESSING TYPEWRITER STENCIL CORPORATION et al.

District Court, S. D. New York.
July 16, 1929.

B. W. B. Brown, of New York City (Wm. Nevarre Cromwell and S. Michael Pineles, both of Chicago, Ill., of counsel), for plaintiffs.

James R. Brown, of New York City, for defendants.

KNOX, District Judge.

Upon the argument of the instant motion for a preliminary injunction against defendants' alleged infringement of certain claims of Fuller patent, No. 1,101,268, and Belknap patent, No. 1,256,509, counsel for defendants frankly stated that as to the first of these grants the only question before the court is as to whether "aluminum sulphate is a coagulant in that portion of the chemical field which is known as colloidal chemistry." If it be held to be such, the infringement is admitted.

In my opinion, the proof now before the court requires the issue to be resolved against the defendants. As respects lyophile and hydrophile colloidal dispersions, the definition of "coagulation" as given by the chemist, Slimowitz, is too narrow. In the sense in which Fuller used the term "coagulate," both in the specifications and claims of his patent, it had no reference to the precipitation of the sols of lyophobe and hydrophobe colloidal dispersions such as colloidal clays or metals. For example, at lines 99 to 104 of his specification, after having specified gelatin, which is a lyophile, as an ingredient of the compound which contributes so much to the success of his invention, he said: "In preparing the gelatin compound aforesaid, instead of potassium dichromate, any substance which has the power to coagulate or harden gelatin may be used, such as a preparation containing tannin or tannic acid. Chrome alum may also be used with good results. * * *"

The affidavit of Dr. Grosvenor, and the authorities on chemistry whose writings are quoted in the appendix to plaintiffs' reply brief, persuade me that for all practical purposes in the manufacture of gelatinous stencil sheets, as disclosed by Fuller, aluminum sulphate will perform the same function that will be discharged by potassium dichromate, and is the equivalent of the latter.

As Judge Mayer said in discussing this patent in A. B. Dick Co. v. Barnett (D. C.) 287 F. 573, 576: "Fuller told the art all the ingredients. Obviously, for instance, it

would have been foolish to attempt to describe a particular kind of glue or gelatin. * * * To have specified a particular brand would have deprived the patent of reasonable elasticity and opened the door to infringers. It is enough if Fuller informed the man skilled in the art to do the thing."

Similarly, it will have been observed, from the portion of the patent specification quoted above, that Fuller did not exclude from his disclosure such coagulants which will produce upon gelatin a reaction such as was described as capable of being brought about by the use of potassium dichromate, and two or three others which he specifically named.

In view of the worth and commercial success of the Fuller patent, neither its specifications nor its terms should be so narrowly construed as to permit the substitution of aluminum sulphate for potassium dichromate to avoid infringement.

The main objection that is interposed to the issuance of a restraining order which, pendente lite, will forbid infringement of Belknap patent 1,256,509, falls upon a relatively dull ear. If, at an earlier date, Geiger had seen fit to put forth the assertions that he now makes concerning his part in the conception and development of the idea embodied in the Belknap grant, he would have had the close attention of the court, particularly upon a motion such as is now made. When, however, the alleged inventor of a worthwhile machine has stood by for a period of eleven years and witnesses the exploitation of the child of his brain by one who is now said to have had no rightful claim of parentage to the invention, and when, as the papers here reveal, Geiger sat in court and assisted, if the present affidavits be true, in the perpetration of a gross and sinful fraud, to say nothing of a miscarriage of justice, the court, which he permitted to be deceived, naturally looks askance upon his recent averments.

Concededly, if Geiger did invent the Belknap machine, an injunction against its use by other persons should not issue. But, as matters stand, upon the record, the patent has all the indicia of validity. With the assistance of Geiger, the rightful issuance to Belknap has been declared not only by this court, but by its appellate tribunal. In reliance upon those declarations, innocent parties have changed their positions and have parted with large sums of money. It would be most unjust to such persons, pending a trial upon the merits of Geiger's present allegations, if his assertions should be entitled to greater credence and more substance than the solemn decrees of the courts which, upon a trial in which he participated, held the patent to have been lawfully issued to Belknap. Than that this should come to pass, it were better that Geiger, and those associated with him, should await the day when their present contentions shall be upheld, before undertaking to make use of the machine described in the patent.

With these considerations before me, and in the belief that defendants have contributed to the infringement of the Belknap patent, the plaintiffs may have relief.

Bond fixed at $20,000.