## VON LEPEL v. TIMES SQUARE STORES CORPORATION.

No. 6655.

District Court, E. D. New York.

July 7, 1933.

Mock & Blum, of New York City, for plaintiff.

Allan Deutsch, of New York City, for defendant.

BYERS, District Judge.

Plaintiff sues for the alleged infringement of his patent No. 1,614,906 for a "Current Converter for Ignition Systems." Validity is conceded, so that but brief reference need be made to the device. It is a compact structure, cylindrical in form, consisting of six small aluminum discs in vertical relation, and minutely separated by spaces called gaps, so arranged that the electric current of an ignition system incident to the operation of an internal combustion engine shall pass from one end of the assembly to the other; in so doing the current is interrupted, i. e., caused to oscillate, so that the spark or discharge produced at the spark plug is disintegrated— that is, the disruptive discharge is broken up into a series of discharges—whereby the combustion resulting from the spark is more generally and completely accomplished than would be the case if no such agency were interpolated between the distributor and the spark plug.

The defendant's device performs the same function, and the only real contention pre-

sented in its brief is that the method employed to accomplish the purpose is not that of the plaintiff, and hence a necessary element of infringement is lacking.

The plaintiff's attachment functions entirely by causing the ignition current to oscillate or break up, because it encounters a series of non-conducting elements in its passage from one end of the device to the other; these are the said gaps, and the coatings of aluminum oxide formed on each of the aluminum discs as the result of current heat. The coating or film is punctured by the current and, being self-healing, the desired oscillations are thus multiplied many hundreds of times every second.

The defendant argues that, while his device produces a substantially identical result, it is accomplished through a different action of the ignition current, and hence there is no identity between the means employed by, or between the operation of, the two structures, and hence there is no infringement shown. That the defendant correctly apprehends the applicable test appears from the discussion of the subject in McDonough v. Johnson-Wentworth Co. (C. C. A.) 30 F. (2d) 375, at page 383.

It becomes necessary to determine, therefore, whether the defendant's device employs the same means and operates in the same way as the plaintiff's.

The defendant calls his device a spark intensifier and relies upon Patent No. 1,909,-255, issued to him May 16, 1933, to demonstrate that infringement has been avoided.

The latter patent opens with the statement that it refers to means interposed between the spark point and the distributor of an ignition system, for "stepping-up" the current. In line 50 on page 2, it is asserted that the device portrayed in the drawing will so operate that the current leaving the coil, will flow through the wire provided for that purpose, "through the intensifier and is stepped-up in its passage from the electrodes provided by the cups and spheres and an increased amount of current will pass from the distributor to each of the spark plugs."

Thus it would appear that the patentee, in using the expression "stepped-up" and "stepping-up," has intended to convey the idea of increase or expansion of the current itself.

Nothing in the defendant's testimony justifies such a teaching. It is not sought to be shown that there is a growth of volume of the current which is generated in a magneto, or in a battery. The patentee Doerrhoefer was himself a witness, and his deposition seemed to be confined entirely to the course of the current in passing through the device, rather than to the effect upon it while so doing.

The invention as claimed is a spark intensifier, cylindrical in form, comprising a sleeve containing oppositely directed metal cups arranged in pairs, which are spaced from each other, containing spheres of high electric conductivity freely arranged in the cups.

In practice the article is seen to be a series of three brass cups formed of upper and lower flanged members which do not meet at the sides; these cups are vertically held in place by a sleeve, and they each contain several little perforated brass balls which have been cadmium plated. The cups appear not to be in actual contact, for the spacing seems to accept a piece of thin paper.

The inventor says that there are air spaces in the cups, but the effort is made to expel this during the course of manufacture, by heating. It would have been more helpful if proof had been offered to show how this process could have dispelled or tended to dispel the air, instead of merely to expand it.

It is not thought that there is a showing that even a partial vacuum is created in the cups during manufacture.

The inventor deposed that the ignition current passed through the brass cups, and the cadmium plated balls, between entrance to and exit from the device, rather than through the air spaces, because the current thus follows the line of least resistance.

The trouble with the theory is that the brass and the cadmium plating both form oxide coatings, as the result of the passage of the current.

The balls, if made of brass only, did not form part of a commercial product, as experience demonstrated, hence resort to the cadmium plating.

To meet the argument that this expedient was adopted to supply the needed element of an oxide coating or film upon the electrodes, the inventor said that he purposely resorted to a metal in which the oxidation process would be retarded, and that he desired to avoid it altogether. That, in the "make-up" of his invention, he does not depend upon any oxidation process whatever.

It is impossible to reconcile this testimony with the statement that, until the balls were plated, the invention could not be reduced to commercial practice; that is, so long as brass alone was so employed.

The assertion that the defendant achieves its purpose by an agency of conductivity rather than one of resistance, has not been fortified by evidence sufficient to meet the plaintiff's proof to the contrary.

The defendant's article is thought to be mechanically different from that described in the plaintiff's patent, and manufactured and sold by him and his licensee in large volume for the past five years. This mechanical difference is not an improvement upon the teaching of the plaintiff's patent, in that no new extension of the fundamental conception is portrayed.

The defendant's disclosure is of a particular assembly through which an ignition current can be passed so as to culminate at the spark in distributed intensity; but that assembly is described in words appropriate for something else, namely, a device which will increase the amount of current passing to the spark plug.

The defendant's device employs brass cups and cadmium plated balls, instead of aluminum discs, to cause an ignition current to oscillate and expend itself in a disruptive spark, and is not otherwise to be distinguished from the plaintiff's invention.

Since the desired result is obtained by employing means which are the equivalents of those taught in claims 3 and 4 of the plaintiff's patent, infringement has been proved.

This conclusion is understood to conform to the decisions in Elliott Addressing Mach. Co. v. Addressing Typewriter Stencil Corp. (D. C.) 39 F.(2d) 232; Welsbach Light Co. v. Sunlight Incandescent Gas-Lamp Co. (C. C.) 87 F. 221; Van Kannell Revolving Door Co. v. Straus (C. C. A.) 235 F. 135.

Decree for plaintiff, to be settled on notice.

If findings are desired, they should be settled on notice, and should contain appropriate recitals as to incorporation, ownership of the patents and licenses, etc.