23 C.C.P.A. (Patents)

**UFER et al. v. WILLIAMS.**

**Patent Appeal No. 3512.**

Court of Customs and Patent Appeals.

Dec. 2, 1935.

Hauff & Warland, of New York City (P. J. Whelan, of New York City, of counsel), for appellants.

Pennie, Davis, Marvin & Edmonds, of New York City (Ernest H. Merchant, of New York City, and William R. Gawthrop, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This appeal brings before us for review a decision of the Board of Appeals of the United States Patent Office in an interference proceeding. Said decision affirmed a decision of the Examiner of Interferences awarding priority of invention to appellee upon the two counts in issue, which counts read as follows:

"1. The process of manufacturing hydrogen from steam and a hydrocarbon which comprises passing a gaseous mixture of steam and a hydrocarbon at reacting temperature over a heated nickel catalyst including as a promoter a compound of a metal, the oxide of which is difficult to reduce, from the group consisting of chromium, vanadium, potassium and aluminum.

"2. The process for the manufacture and production of hydrogen from hydrocarbons which comprises passing a gaseous mixture of steam and a hydrocarbon over a catalytic body comprising nickel activated by the addition of aluminum ox-

ide at a reacting temperature below 650° C."

The invention involved is sufficiently described in said counts.

■ Appellants' application was filed March 10, 1927. Appellee's application was filed June 25, 1926. However, appellants rely for reduction to practice of the counts in issue upon an application filed by them in Germany on March 10, 1926, not more than twelve months prior to the filing date of their United States application, and prior to the date of appellee's application. On the basis of this German application, the Examiner of Interferences, upon motion of appellants, shifted the burden of proof from appellants to appellee, and appellee became the junior party. The burden was therefore upon appellee to establish priority of invention by a preponderance of evidence.

The interference originally declared was upon three counts, and, upon the motion of appellants, the interference was dissolved as to said three counts on the ground that they were not patentable. At the same time, appellee proposed to amend the interference by adding four counts. The Examiner of Interferences allowed the amendment as to two of the proposed counts, which are the counts here involved, and denied the motion as to the other two proposed counts. The interference was thereupon redeclared upon the two counts here involved.

So far as appears from the record, the only ground upon which appellants opposed the amendment adding to the interference the counts here involved was that they were not patentable, and appellants' brief states that the ground of opposition to the admission of said counts was "that they were not patentable over the prior art."

Both sides took testimony. Upon behalf of appellants only one witness testified, and his testimony was principally directed to the question of whether the counts in issue were patentable over the prior art. Upon motion of appellee, such testimony was suppressed to the extent that it related to the patentability of the counts in issue.

■ In this court appellants submitted their case upon their brief, without oral argument. Throughout their brief, counsel for appellants argue that the counts are not patentable to either party. This conten-

tion, under the well-established rule, we may not consider in this proceeding. The only question before us is that of priority and questions ancillary thereto. Inasmuch as the only ground of appellants' opposition to the amendment adding the involved counts to the interference was that they were unpatentable, there are no ancillary questions to be considered, and the only issue before us is priority of invention between the parties hereto.

■ Upon this question appellants make two contentions:

(1) That the record does not establish a reduction to practice of the invention involved in the counts by appellee prior to March 10, 1926, the date of the German application, inasmuch as he has not shown that in his claimed reduction to practice the compounds of metal enumerated in count 1 acted as *promoters* of the nickel catalyst, or that, as to count 2, the nickel was *activated* by the addition of aluminum oxide; that therefore we should hold that priority cannot be determined, and remand the case for further proceedings, or priority should be awarded to appellants upon their constructive reduction to practice in the filing of their German application, March 10, 1926.

(2) That, if said last-named contention be not sustained, the record establishes that priority on the use of the four substances named in count 1 as promoters is divided between the parties and, as to that count, the cause should be remanded to the Patent Office for further proceedings, to the end that the count be "split up" to award the parties their respective discoveries.

We will first consider the contention enumerated above as No. 1. It appears from the record that nickel had long been recognized as a catalyst in a process for the production of hydrogen from steam and methane. Both of the parties hereto, in their respective applications, claim to have found a new catalyst for this process by the use of nickel with a compound of a metal the oxide of which it is difficult to reduce, such as aluminum, chromium, vanadium, and potassium. Before the Patent Office tribunals appellants urged the unpatentability of the counts upon the ground that they were anticipated by a patent to Mond & Langer, No. 417,068, which disclosed the use of nickel as a catalyst in conjunction with pumice; it being appellants' claim that pumice is a sub-

stance which is largely composed of a compound of aluminum and contains a compound of potassium. Appellants contend that the Patent Office tribunals held that the counts in issue were not anticipated by said patent only because said patent did not disclose that pumice was a promoter or activator of the nickel, as called for by the counts here in issue, and therefore argue that it was necessary for appellee to establish that the substances named as promoters or activators in the counts did actually promote or activate the nickel. It is apparently appellants' contention now that it is impossible to ascertain that the substances named in the counts as promoters or activators do actually promote or activate the nickel catalyst, in that the said substances may enhance the activity of the nickel or the nickel may enhance the activity of the substances named in the counts as promoters or activators of the nickel. Appellants rely upon the testimony of appellee to the effect that it is impossible to ascertain whether the nickel is a promoter of the aluminum, chromium, vanadium, and potassium, or whether said substances are promoters of the nickel.

We regard this question raised by appellants as purely academic and not material to the issues here involved. In the specification of appellee we find the following: "Nickel alone even with the exclusion of chlorine and other catalyst poisons is not very active for the production of hydrogen by a reaction between steam and hydrocarbons at temperatures below 700° C. I have discovered, however, that *by the addition of* suitable substances *referred to hereinafter as promoters* the catalytic behavior of nickel in this reaction can be improved to the extent that the conversion of hydrocarbons into hydrogen becomes practicable at temperatures materially below 700° C. Among the substances which are suitable as promoters are * * * *vanadium oxide,* * * * *chromium oxide, aluminum oxide,* * * * potassium oxide * * *. While the addition of promoters to nickel catalysts is especially advantageous since it permits the production of hydrogen from hydrocarbons and steam at temperatures even below 700° C., the usefulness of such promoted nickel catalysts is not limited to these temperatures. * * * *"* (Italics ours.)

It will be observed from the foregoing quotation that appellee contemplated the addition to the nickel of the substances named, and that he styled such substances as "promoters." Appellee testified as follows upon cross-examination.

"XQ112. If you knew nothing about the activity of alumina, either alone or on pumice, how did you know whether the alumina enhanced the activity of the nickel or the nickel enhanced the activity of the alumina? A. The answer is—I didn't know.

"XQ113. Am I correct in concluding, then, that when you say nickel promoted by alumina or nickel promoted by ceria, etc., you mean a mixture of nickel with any of these substances? A. Yes."

We next turn to appellants' specification, from which we quote: "We have now found that hydrocarbons may be rapidly and practically completely transformed into hydrogen and carbon dioxid in a single operation by treating them with steam at moderately high temperatures in the presence of catalysts consisting of nickel, cobalt, or iron (which metals may be referred to as 'metals of the iron group') *activated by an addition of* other metals, or of metallic compounds, for which purpose metals, the oxids of which are difficult to reduce, or compounds of such metals are especially suitable. For example, *chromium, vanadium,* or compounds of the alkali—, alwaline—, earth— or earthy metals, such as *potassium,* magnesium, or *aluminium,* or of other metals may be employed as *activators.* Compounds of nickel, cobalt, or iron may also be used as *activating admixtures.* Preferably the catalysts should be deposited on metallic carriers. A particularly suitable method of preparing catalysts of the kind in question consists, for example, in spraying a solution of nickel nitrate on to metallic *aluminium* which serves as a support and simultaneously furnishes the *activator,* namely *aluminium oxid,* the formation of which may be effected either at once when the nickel nitrate solution is sprayed up or during the course of the succeeding operations." (Italics ours.)

It will thus be observed that appellants in their specification use the words "activated" and "activators" in the identical manner that appellee used the word "promoters," and it is too clear for argument that both parties meant to convey in their respective specifications the idea that, in the process, the *addition* of the substances named to the nickel produced a new and useful result for which both parties claimed

invention. We therefore hold that it was not necessary for appellee, in order to reduce the invention to practice, to establish that the substances named promoted or activated the nickel and negative the possibility that the nickel may have promoted or activated the substances named, and we find no merit in said first contention of appellants.

We next come to the consideration of appellants' contention hereinbefore enumerated as No. 2.

This contention is obviously based upon the theory that the use of compounds of chromium, vanadium, potassium, and aluminum, in conjunction with nickel in the process described in the counts, is in each case a separate invention, and appellants insist that they should be held to be the inventors of the use of compounds of vanadium and potassium in such connection. The brief of appellants contains the following:

"The evidence shows:

"(1) That, as between himself and Ufer & Niemann, Williams was the first to reduce to practice a catalyst containing nickel and alumina and a catalyst containing nickel and chromium.

"(2) As to a catalyst containing nickel and a compound of potassium and a catalyst containing nickel and a compound of vanadium Williams must rely on the filing date of his application for a reduction to practice. This date is subsequent to the filing date of Ufer & Niemann's German application, which discloses catalysts containing nickel and a compound of potassium and nickel and a compound of vanadium and therefore constitutes a reduction to practice of such catalysts.

"The ultimate fact is that as to the four substances listed in the Markush expression, Williams is prior as to some and Ufer and Niemann are prior as to others. It may be argued by counsel for Williams on this appeal that the evidence adduced on behalf of Williams proves a reduction to practice by him prior to Ufer & Niemann's record date of a catalyst containing nickel and a compound of potassium. Whether or not Williams actually reduced such a catalyst to practice is immaterial to the question here involved, since the fact remains that priority as to the four substances listed in the claim is divided between the parties.

"The question presented is whether, with regard to a claim like Count 1, where one party is prior as to some of the substances listed and the other party is prior or as to the other substances listed, priority should be awarded to the party who was first to reduce to practice any of the substances listed in the Count or the Count should be broken up into its component parts and priority awarded on each of the component parts according to the evidence in the record."

The foregoing admission in paragraph 1 disposes of count 2 here involved, and is a concession that, upon that count, priority was properly awarded to appellee, in view of our holding as to appellants' contention No. 1.

It is also an admission upon the same basis that appellee was the first inventor with respect to the use of compounds of chromium and of aluminum named in count 1. Moreover, the evidence clearly establishes that appellee used said last-named substances in carrying out the process of the counts prior to the filing date of appellants' German application.

It appears from the record that appellee was, in 1924 and 1925, chemical director of the "Ammonia Department, Du Pont Company," Wilmington, Delaware, and was a research chemist in charge of a small group of men, among whom were three chemists, viz., John S. Beekley, Walter A. Dew, and John L. Brill, all employees of said "Du Pont Company." All of said chemists testified on behalf of appellee herein.

Without detailing the testimony of appellee and said witnesses, we are satisfied that appellee was the first to conceive the invention here in issue, at least in so far as it relates to the use of compounds of chromium, aluminum, and potassium, and that under his directions said witnesses Beekley and Dew conducted tests of the process with the use of chromium and aluminum in 1924 and 1925, which establishes a successful reduction to practice of the invention, in so far, at least, as compounds of chromium and aluminum are concerned. As to the use of potassium in the process here involved, the witness Beekley testified to the use of oxide of potassium in the process here involved, together with oxide of aluminum. He further testified that the test of the catalyst with said oxides was at the direction of appellee.

Whether or not it should be held that the testimony in behalf of appellee es-

tablishes a reduction to practice of the process here involved with the use of oxide of potassium, we need not here decide, for we are satisfied that it at least establishes that potassium oxide was an equivalent for oxides of aluminum and chromium in the carrying out of the process, and such demonstration of the use of oxide of potassium was prior to the filing date of said German application.

There is no testimony in the record that the use of vanadium, or a compound thereof, in the involved process was ever tested by appellee or the chemists working under his direction. That a compound of vanadium is an equivalent of a compound of aluminum, chromium, or potassium in said process is stated, in effect, in the application of each of the parties hereto, and is conceded; but appellants contend that, in the process here involved, oxide of vanadium was not a known equivalent for oxides of aluminum and chromium at the time of the filing of said German application, and that, as between appellants and appellee, they (appellants) should be held to be prior inventors of the use of a compound of vanadium in said process.

This is, in effect, a claim that count 1 is improper because it sets forth more than one invention. The record does not show that appellants ever objected to the admission of said count upon such ground, and indeed such claim is inconsistent with appellants' application, which treats compounds of vanadium as the equivalents of the other substances named in said count 1. As the case stands before us, we must regard count 1 as embodying a single invention, and it would seem that, as between the parties hereto, the party first to reduce the involved process to practice by the use of any of the four substances named therein should be held to be the first inventor of *the* invention set out in said count 1.

This seems to have been the view of the Examiner of Interferences. The Board of Appeals, however, in its decision made no reference to this phase, and upon this point we prefer to rest our decision upon the merits of the case, as did the board, regardless of any question of procedure. The board accepted the rule of equivalents set forth in the case of Read Holliday & Sons, Ltd., v. Schulze-Berge et al. (C.C.) 78 F. 493, 496, and quoted therefrom as follows: "In the light of the later decisions on this subject, I think the law must be that where the new ingredient is such as would have been known to or employed by the ordinary skilled practical chemist, or is such as would naturally have been developed in the growth of the art, and the substitution thereof involves no alteration or new operation or result, it is covered by the patent, provided the specifications and claims are sufficiently broad to include it. If, on the other hand, the development of the new ingredient required the exercise of the creative or inventive faculty, and certainly if its introduction causes some novelty in function or result, it would not be an equivalent."

Following this quotation the decision of the board states:

"It seems apparent from this statement of the law just quoted that whether these substances are equivalents depends to some extent according to the decision on whether they would have been developed in the growth of the art or employed by the ordinary skilled practical chemist in substitution for the actual tests. It is to be noted that Dr. Bekley [Beekley] in his experiment indicated as No. 151 in the tabulation on page 5 of Williams' brief, states that he actually used potassium oxide in an experiment and the notebook record is in evidence to show this experiment as having been performed according to Dr. Beekley's testimony. Appellants point out that Dr. Beekley is not corroborated on this experiment but Dr. Beekley is not the applicant in that case and his experiment allegedly was performed before any controversy arose over patent rights and it seems that it may be taken at least as an indication that one skilled in the art would probably develop the use of this substance for the purpose indicated in the course of developing equivalents.

"It is also noted that according to the Medsforth publication vanadium oxide with nickel had been considered as a promoter of a nickel catalyst before the time of the experiments of the chemists working under the direction of the party Williams. In view of what seems to have been known up to the time of the reduction to practice of the two examples, chromium and aluminum, with respect to equivalents therefor and witness Beekley's testimony, and in view of the law as stated by the decision in the case of Holli-

day & Sons v. Schulze and Berge and 'Walker on Patents' it is our view that sufficient reduction to practice and knowledge of equivalents has been established to entitle the party Williams to count 1."

The Medsforth publication referred to in the above quotation is a part of the record herein. It appears to be a publication issued in 1923, written by one Samuel Medsforth, and entitled "Promotion of Catalytic Reaction."

This article deals in part with a reaction using nickel with certain substances as a catalyst, among which substances are oxides of chromium, aluminum, and vanadium, wherein methane, a hydrocarbon, is formed opposite in direction to the process of the counts here involved, that is to say, one of the objects of Medsforth was to produce methane from hydrogen and the oxides of carbon, while the process defined in the counts is for the production of hydrogen from steam and a hydrocarbon through the use of catalysts enumerated in the counts.

The witness Lewis, who testified in behalf of appellants, stated:

"Q43. * * * It has long been known that a catalyst which catalyzes a chemical reaction in one direction must be a catalyst for speeding up the reaction in the opposite direction when the conditions of reaction are so changed as to make the reaction tend to go in the opposite direction. This is a well-recognized scientific principle. Now, it has long been known that these addition agents to nickel as a catalyst are effective in improving its catalytic activity for the formation of methane from the oxides of carbon and hydrogen. In other words, for the reverse of the reaction we have been considering. Most specifically, it was pointed out by Medsforth in 1923 that a whole series of addition agents to nickel, mixed with the nickel in the form of solutions, as the first step in the preparation of the catalyst, give superior catalysts for the formation of methane from hydrogen and the oxides of carbon. Clearly, then, in view of the principle stated above, one would expect the same mixtures to be superior catalysts for the reverse reaction. * * *

"Q.44. When and by whom was the rule, to the effect that a catalyst which will accelerate one side of a reversible reaction will also accelerate the other side of that reaction if the conditions are properly adjusted, first enunciated? A. I know it was enunciated by Nernst, the great German physical chemist, as early as 1907, but he attributes the principle to Helmholtz, who worked the last half of last century. The first clean-cut and emphatic statement of the principle, which I have myself located, is that of Nernst. * * *

"Q47. You stated that Nernst gave the first clean-cut and emphatic statement of the effect of a catalyst in a reversible reaction. Can you give the statement that was made by Nernst? A. Yes. I have before me a book on Theoretical Chemistry by Nernst, translated into English by Codd. The volume I have is the 1923 edition, published by MacMillan & Co., Ltd., of London, and the MacMillan Company in this country. On page 666 is found the following statement: 'Since the catalyst takes no part in the reaction the equilibrium constant is not altered by its presence. This was seen (p. 524) to be equal to the ratio between the velocity constants of the two reactions in opposite directions. *A catalyst must therefore always affect the velocity of the reverse reaction.* If, for example, any added substance increases the rate of formation of the body, it must equally increase its velocity of decomposition.'"

Appellants contended before the Patent Office tribunals, and as we understand their brief they here contend, that the said Medsforth publication is a complete anticipation of the invention defined in the counts here involved. Whether that be true or not we may not here determine, for that is a question of the patentability of the counts with which we are not here concerned; but we are of the opinion that said Medsforth publication warrants a finding that, before the filing date of appellants' German application, it would be known to one skilled in the art, having knowledge of the use of chromium and aluminum in the process here involved, that a compound of vanadium was an equivalent of compounds of chromium and aluminum in carrying out said process.

We are of the opinion that the Board of Appeals did not err in holding that appellee was the first to reduce to practice the invention involved in the counts in issue, and therefore its decision, affirming the decision of the examiner awarding priority of invention to appellee, should be affirmed by us.

■ Appellants make certain other contentions in their brief which we do not find it necessary to discuss for the reason that they relate either to patentability of the counts or to questions which should have been raised during the motion period of the interference, but were not, and hence may not be raised upon this appeal.

The decision of the Board of Appeals is affirmed.

Affirmed.