23 C.C.P.A.(Patents)

## In re AYRES.

### Patent Appeal No. 3598.

Court of Customs and Patent Appeals.
May 4, 1936.

A. M. Houghton, of Washington, D. C. (Henry C. Parker, of Washington, D. C., of counsel), for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate. Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner denying patentability, in view of the prior art, of claims numbered 1, 11 to 15 inclusive, 17 and 18, in an application for patent relating to alleged improvements in manufacture of stabilized motor fuels.

The claims so rejected read:

"1. The process of stabilizing cracked motor fuels and the like which comprises determining the oxygen stability period and the rate of subsequent gum formation in the oxygen stability test substantially as described and adding thereto a small per cent of a material increasing the oxygen stability period together with a small percentage of material retarding the rate of subsequent gum formation in the oxygen stability test."

"11. A normally gum forming cracked gasoline stabilized by containing a small amount of an antioxidant selected from a group consisting of alpha-naphthol, hydroquinone ammonia, pyrogallol, triphenyl phosphate, benzidine, ortho toluidine and para toluidine, and also containing a small amount of a gum retarding agent selected from a group consisting of phenyl beta naphthylamine, diphenylamine, dimethyl, aniline, alpha-naphthol-benzein, amyl alcohol, triphenyl carbinol, xylidene and meta toluidine.

"12. A normally gum forming cracked gasoline stabilized by containing a small amount of phenol selected from a group consisting of alpha-naphthol, hydroquinone ammonia and pyrogallol and also containing a small amount of an amine selected from a group consisting of phenyl beta naphthylamine, diphenylamine and dimethyl aniline.

"13. A product of claim 11 in which the inhibitor and the gum retarding agents are present in amounts totaling less than 0.01 per cent.

"14. The product of claim 12 in which the inhibitor and the gum retarding agents are present in amounts totaling less than 0.01 per cent.

"15. A normally gum forming cracked gasoline stabilized by containing alpha-naphthol and alpha naphthylamine, the total quantity added not substantially exceeding 0.001 per cent by weight."

"17. A normally gum forming cracked gasoline stabilized by containing a small amount of an antioxidant and also containing a small amount of a different gum retarding agent selected from a group consisting of diphenylamine, dimethylaniline, phenyl-beta-naphthylamine, alpha-naphthol-benzein, amyl alcohol, triphenyl carbinol, xylidine, and meta toluidine.

"18. The process of stabilizing cracked motor fuels and the like which comprises adding thereto a small amount of an anti-oxidant and also a small amount of a different soluble organic material retarding the rate of gum formation subsequent to the induction period of the oxygen stability test, as determined by tests substantially as described; the said organic material being selected from a group consisting of diphenylamine, dimethylaniline, phenyl-beta-naphthylamine, alpha-naphthol-benzein, amyl alcohol, triphenyl carbinol, xylidine and meta toluidine."

All of the appealed claims were rejected by both tribunals of the Patent Office upon a British patent No. 319,362 issued December 19, 1930, to Standard Oil Development Company, a corporation of the state of Delaware, U. S. A.

The examiner also listed as a reference, but did not otherwise mention, a booklet, referred to as "U. O. P. Booklet #79, Dec. 5, 1929, pub. by Universal Oil Prod. Co., Chicago." This reference does not appear in the printed record before us.

Claims Nos. 1 and 18 are process claims, while the others cover the product. Three process claims and one product claim stand allowed.

The application contains no drawing, but the following succinct statement from

the decision of the Board of Appeals serves to clarify the subject-matter: "Appellant claims to have discovered that cracked motor fuels tend to deteriorate in accordance with a two-stage process upon prolonged storage. During the first stage, oxidation of the unsaturates takes place and during the final, polymerization of the oxidized material, the stored product as a result of this two-stage deterioration containing an undesirable gummy material. By testing a number of substances appellant has found that oxidation may be greatly retarded by the use of some and that the second stage polymerization may be retarded by others. He has found that, by combining substances of each type, a very small amount will serve the purpose of preventing deterioration due to gum formation in storage and use."

It will be noted that claim 11, supra, requires (1) what appellant designates "an anti-oxidant" which may be selected from a group of several named chemical compounds, and (2) a "gum retarding agent," which may be selected from another group of named chemical compounds; that claim 12 requires (1) a small amount of phenol selected from a group there named, and (2) a small amount of an amine selected from another group also named; that claim 17 mentions (1) "an anti-oxidant," without naming any particular compound constituting such anti-oxidant, and (2) "a different gum retarding agent" selected from a group of named chemical compounds; and that claim 18 is, in this respect, generally similar to claim 17. Claim 13 is dependent upon claim 11, and claim 14 dependent upon claim 12. Claim 15 is limited to a product stabilized by containing (1) alpha-naphthol, which, when mentioned in other claims, is placed in the anti-oxidant group, and (2) alpha-naphthylamine, which is not specifically named in any other of the claims, but which is named as a retarding agent in appellant's specification.

Claim No. 1 provides broadly for use of (1) "a material increasing the oxygen stability period," and (2) a retarding material, and does not name any compound as exemplifying either material. An element of claim 1, also present in claim 18, but not present in any other of the claims, is that of a test "substantially as described," for determining (1) "the oxygen stability period," and (2) "the rate of subsequent gum formation * * *."

Each of the claims, either by specific statement or by the specific percentages named, contains the feature of a "small amount" or "small per cent." of the respective compounds used, and appellant's brief emphasizes the idea expressed in an assertion of the specification reading, "the combined quantity of the two respective substances used is less than the quantity required of each substance alone to secure stability."

The British patent which relates to low-boiling hydro-carbon oils, after reciting the frequent pressure of gum and gum-forming constituents in hydrocarbon oils, including gasoline, teaches that:

"It has now been found that the addition to the naphtha of an aromatic compound with condensed nuclei having an alpha-substituted group which is able to combine with acids offers great advantages in the direction of reducing gum as indicated by the above described test and also prevents an increase of gum for prolonged, if not for indefinite periods.

"Examples of aromatic compounds with condensed nuclei containing such groups are alpha-naphthol, alpha-naphthylamine and phenyl-alpha-naphthylamine."

Elsewhere the patent states that, "Mixtures of addition agents, such as alpha-naphthol and alpha-naphthylamine, may be added to gasoline with good results * * *." The patent also teaches that: "The quantity of the addition agent does not substantially exceed 1 gram per litre of the naphtha and is generally between the approximate limits of .01 and 1.0 gr. per litre. There appears to be an optimum quantity of the agent which will give the best results and it is a simple matter to make up samples of different strengths and select empirically the most suitable concentration. This behaviour appears to be characteristic of all suitable addition agents including those disclosed in our Specifications Nos. 318,521 and 319,363."

The first claim of the British patent reads: "1. A composition of matter consisting, of a low-boiling hydrocarbon oil containing an aromatic compound with condensed nuclei having an alpha-substituted group which is able to combine with acids, such compound being present in amount not substantially exceeding 1 gram per litre of low-boiling hydrocarbon oil."

It seems to us to be perfectly clear that the British patent, while specifically naming fewer aromatic compounds than does appellant, is nevertheless sufficiently broad in its specification and claims to cover more than those named.

The brief on behalf of appellant concedes that all the so-called anti-oxidants named in claim 11 are "equivalent in function to alpha-naphthol" and that all of the gum retardents in the claim are "equivalent to alpha-naphthylamine." We understand this to be in fact true of the respective compounds not named in claim 11 but named in other claims.

However, appellant after making such concession argues: *"But prior to appellant's researches these equivalencies were unknown.* The effectiveness of alpha-naphthol as an anti-oxidant and of alpha-naphthylamine as a gum retardant *was first disclosed in the present application.* In fact the art did not know these tests whereby appellant discovered this equivalency. It follows that the rejection of the claim by reason of these equivalencies is a rejection upon appellant's own disclosure. It is, of course, obvious that an application cannot be used as an anticipatory reference against itself. It would appear unnecessary to labor the point that the finding of fact by the Office that appellant's claims are anticipated rests upon a joinder with the British patent of appellant's application. This joinder cannot alter the fact that the matter of claim 11 is new in the art and not anticipated by the British patent. The finding of the Office is erroneous in fact." (Italics quoted.)

We are unable to concur in the soundness of the foregoing contention. It is true that the British patent does not refer to alpha-naphthol as an "anti-oxidant," nor to alpha-naphthylamine as "a gum retardant"; but, as shown by the above quotation from the specification, it clearly does teach the results of gum reduction and the prevention of gum increase by the use of a mixture of those two agents. While, therefore, appellant may have been the first to give names suggestive of the function of the respective agents, we cannot agree that the effectiveness of such agents to perform the ultimate functions which appellant says they perform was not disclosed in the British patent.

As to the assertion that prior to appellant's researches the equivalency of various agents to the respective agents named in the British patent was unknown, we are not cited to, nor have we found, anything in the record which seems to us to support it, and there is nothing in any of the claims which claims such equivalency as a new discovery. It has been heretofore pointed out that the British patent teaches the use of an "aromatic compound with condensed nuclei having an alpha-substituted group," and that claim 1 of said patent broadly claims in accordance with such teaching.

In the case of Ufer et al. v. Williams, 79 F.(2d) 892, 896, 23 C.C.P.A.(Patents) ——, decided December 2, 1935, this court quoted with approval the rule of equivalency set forth in the case of Read Holliday & Sons, Ltd., v. Schulze-Berge et al. (C. C.) 78 F. 493, and quoted therefrom as follows: "In the light of the later decisions on this subject, I think the law must be that where the new ingredient is such as would have been known to or employed by the ordinary skilled practical chemist, or is such as would naturally have been developed in the growth of the art, and the substitution thereof involves no alteration or new operation or result, it is covered by the patent, provided the specifications and claims are sufficiently broad to include it. If, on the other hand, the development of the new ingredient required the exercise of the creative or inventive faculty, and certainly if its introduction causes some novelty in function or result, it would not be an equivalent."

There is nothing in the record before us to indicate that any of the respective compounds, named by appellant as agents which may be used instead of alpha-naphthol and alpha-naphthylamine, are not such as would have been known to or employed by the ordinary skilled practical chemist, or that they are not such as would naturally have been developed in the growth of the art. Neither is there anything to show that their substitution involves any alteration or new operation or result. In consequence, we feel that the British patent was properly held to be an anticipation.

In the brief on behalf of appellant the following argument is made: "In the holding by the Patent Office that the claims are anticipated by the British patent in view of appellant's disclosure, an applicant is being penalized for the fullness of

his disclosure. If the original specification had left out the mention of alpha-naphthol as an anti-oxidant, had not disclosed that alpha-naphthol has the effect of inhibiting the oxidation actions taking place during the inductance period of gum formation, or had left out the disclosure that alpha-naphthylamine has the effect of retarding the action of gum formation succeeding the inductance period, then, and in that event, the British reference would not have been available as a reference."

Whether this contention be correct we do not feel called upon here to determine. We must pass upon the application in the form which appellant chose to give it. The fact is that he did choose to make a disclosure which includes alpha-naphthol as one compound of one group and alpha-naphthylamine as one compound of another group. Also, he chose to name alpha-naphthol specifically in a number of his claims. It is true that he does not specifically name alpha-naphthylamine in any claim except claim 15. From the letter of the examiner of November 15, 1933, finally rejecting the claims, the natural inference would seem to be that during the prosecution of the application some "anticipated element" was canceled, but it was in effect held by the examiner, whose holding was approved generally by the board, that the anticipated element, so canceled, was disclosed as an equivalent of the other elements retained in the group which were "determinative of the class," and that the class was not rendered new, nor was the old class rendered patentable merely by the cancellation of such anticipated element.

Appellant does not convince us that such holding was erroneous.

Certain of appellant's claims are limited to percentages which may differ in degree from the percentages taught by the reference patent, but appellant does not teach that his specific percentages are critical. His specification says: "While the proportions in the specific examples are found to be highly advantageous, larger percentages can be used and particularly with other inhibitors."

As has been stated, claims 1 and 18, which are process claims, include the feature of an "oxygen stability test"; the test being that "substantially as described" in the specification. While it is urged that applicant's test so described, said by the board to be known in the art as the "bomb" test, is different from the "dish" test of the British patent, nothing is claimed by appellant for the test per se; it being simply an element or step in the combination. Whether the test as such be new or not, we are unable to say; but this is immaterial, since it is not shown that it lends novelty to the combination taken as a whole. The board says: "It seems obvious that as a stabilizing proposition, claim 1 properly includes only the addition of stabilizing substances. The final result would apparently be the same whether an original test were made or not. The claim specifies no particular relation between the test and the substances to be added and is therefore in the nature of an aggregation."

Under the state of facts above outlined, we are not convinced that the rejection of the appealed claims by the tribunals of the Patent Office constituted error.

The decision of the Board of Appeals is therefore affirmed.

Affirmed.